FILED
2016 Aug-12 AM 09:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| JEFFERY K. SHARP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | 3:15-cv-00505-JEO |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Jeffery K. Sharp ("Plaintiff") brings this action pursuant to the provisions of § 204(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). (Doc.[1] 1). Plaintiff avers that the Commissioner erred as a matter of law in determining that he is not entitled to benefits and issued a decision that was not based on substantial evidence and is inconsistent with applicable law. The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference. The parties have agreed to the jurisdiction of

---

[1] References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

this court for disposition of the matter. *See* 28 U.S.C. § 636(c), FED. R. CIV. P. 73(a). Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed.

## I. PROCEDURAL HISTORY

In July 2012, Plaintiff filed an application for a period of disability and disability insurance benefits, alleging disability commencing January 1, 2012. (R.[2] 112-118). The claim was initially denied on October 31, 2012. (R. 63-68). Plaintiff timely filed a written request for hearing on January 7, 2013. (R. 70-72). Plaintiff then appeared and testified before an Administrative Law Judge ("ALJ") at a hearing held on August 27, 2013. (R. 26-42). Plaintiff, her counsel, and a vocational expert ("VE") attended the hearing. (R. 26). The ALJ issued a decision on October 18, 2013, ruling that Plaintiff was not entitled to disability benefits. (R. 13-22).

Plaintiff requested the Appeals Council to review the ALJ's decision (R. 9), which the Appeals Council denied on January 26, 2015. (R. 1). On that date the ALJ's decision became the final decision of the Commissioner. Plaintiff then filed this action for judicial review under 42 U.S.C. § 405(g).

---

[2]References herein to "R. __" are to the page numbers of the administrative record, which is located at Docs. 7-1 through 7-8.

## II.  STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly defined.  The function of the court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *See, e.g.*, *Richardson v. Perales*, 402 U.S. 389 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).  The court evaluates the ALJ's legal decisions *de novo* in assessing the substance of the action, because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis*, 985 F.2d at 531. In addition, the court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  Substantial evidence is "more than a scintilla, but less than a preponderance," and is "such relevant evidence that a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004); *Bloodsworth*, 703 F.2d at 1239.

The court must uphold factual findings that are supported by substantial evidence.  However, if the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining

that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits under the Social Security Act, a claimant must show the inability to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which is demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); 42 U.S.C. § 1382c(a)(3)(D).

When a claimant asserts he is disabled based, at least in part, on pain or other symptoms, an ALJ must use a two-part test when considering the claimant's complaints. *See* C.F.R. §404.1529(a)-(c); Social Security Ruling (SSR) 96-7p. The first step requires the ALJ to consider whether there is an underlying medical impairment that could reasonably be expected to produce the claimant's pain or other symptoms. *Id*. The second step requires the ALJ to consider any objective evidence that confirms severe pain from it, or that the condition is so severe that it

could be expected to be painful. *Wilson*, 284 F.3d at 1225. In contrast, if there is no objective evidence confirming the pain's severity, the ALJ must then analyze the intensity, persistence, and limiting effects of the claimant's alleged symptoms by reviewing the record evidence and the credibility of his subjective complaints. *Id*.

The Commissioner's regulations provide for a six-part analysis that the ALJ must consider when evaluating a claimant's subjective complaints: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) any precipitating and aggravating factors; (4) medications taken to alleviate pain, including side effects and effectiveness; (5) treatment received to relieve pain; and (6) any other measures the claimant uses to relieve pain. SSR 96-7p. The ALJ weighs these elements in connection with the objective evidence in the record to make a credibility determination. 20 C.F.R. § 404.1529 (c)(4). If the ALJ determines that the claimant is not disabled under these guidelines, but is unable to return to previous work, the burden then shifts to the Commissioner, requiring a showing of other work the claimant can do. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). It must be further shown that such work exists in the national economy in significant numbers. *Id.*; *Evans v. Comm'r of Soc. Sec.*, 551 F.

App'x 521, 524 (11th Cir. 2014).[3]

## IV.  FINDINGS OF THE ALJ

Plaintiff was 52 years old at the time of his hearing before the ALJ.  (R. 29). He has a ninth grade education and past relevant work experience as a logger.  (R. 29, 37).  He alleges in his disability report that he has been unable to work since January 1, 2012.  (R. 28).  He further alleges that his disability is due to pain and numbness in his back and left leg.  (R. 31).

The ALJ found that Plaintiff had severe impairments of postlaminectomy syndrome, but that his impairments, alone and in combination, did not meet or medically equal the severity of one of the listed impairments in the Listings.[4]  (R. 15-16).  The ALJ then found that Plaintiff had the residual functional capacity[5] ("RFC") to perform light work, subject to the following limitations: "he can occasionally carry up to twenty founds; he can frequently carry up to ten pounds; he can stand and/or walk for a total of six hours in an eight-hour workday; he can sit with normal breaks for a total of six hours in an eight-hour workday; his ability to push and pull with the upper extremities is unlimited within the range of light

---

[3]  Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

[4] The Listings are located at 20 C.F.R. pt. 404, subpt. P, app. 1.

[5] Residual functional capacity is the most a claimant can do despite his impairment(s). *See* 20 C.F.R. § 404.1545(a)(1).

work described above; he should not be required to climb ropes or scaffolds; he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; he should not be required to work around hazardous machinery or at unprotected heights." (R. 16).

The VE, given the above limitations by the ALJ during the hearing (and the ALJ adding the limitation that "the ability to push and pull with…the lower extremities will be unlimited within the range of light work"), testified that such limitations would allow for Plaintiff to perform such duties as housekeeper, cafeteria attendant, and small products assembler. (R. 39-40). The ALJ ultimately concluded that Plaintiff was not disabled. (R. 16-22).

## V.  DISCUSSION

Plaintiff first contends that the ALJ failed to properly evaluate the credibility of his complaints of pain consistent with the Eleventh Circuit's pain standard. (Doc. 11 at 4-5). As part of this claim, Plaintiff alleges that the ALJ failed to fully and fairly develop the record required as by *Welch v. Bowen*, 854 F.2d 438 (11th Cir. 1998) and that his determination is not supported by substantial evidence as required by *Hale v. Bowen*, 831 F.2d 1007, 1021 (11th Cir. 1987). (*Id*. 6-12).

### A.  Proper Assessment of Credibility Consistent with Regulations

The ALJ properly followed the two-step process in assessing Plaintiff's pain.

First, he found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (R. 17). Second, he determined that Plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were "not entirely credible." (*Id*.) The subsequent discussion by the ALJ supports his decision.

      The ALJ stated, "The objective findings in this case vary widely and provide only partial support for the claimant's allegations generally." (R. 17). Plaintiff challenges this determination, asserting that the ALJ "mischaracterized the evidence." (Doc. 11 at 6).

      Plaintiff's relevant medical history commenced on August 28, 2009, when he underwent a decompressive lumbar laminectomy L3-4-5 with microdiscetomy, L4-5. (R. 181). On January 24, 2011, an x-ray of his lumbar spine demonstrated "[d]egenerative changes with end plate irregularities and disc space narrowing at L4-5 and to a lesser degree L5-S1." (R. 201). There was also "some degree of bony neuroforaminal narrowing" in the same area. (*Id*.) About one year later on February 2, 2012, Plaintiff underwent a lumbar CT scan that revealed post-operative changes but no disc herniation or spinal stenosis. (R. 199). A lumbar myelogram done the same day was deemed "normal," with the radiologist noting that "[t]he nerve roots appear normal L1-2, L2-3, L3-4, L4-5, and L5-S1 appear

normal." (R. 197). Plaintiff's neurologist, Dr. Roger Ray, stated the same myelogram showed subtle disk abnormality at L4-5, but was otherwise normal. (R. 236). In January 2013, another of Plaintiff's treating neurologists, Dr. J. Greg Adderholt, Jr., interpreted the same myelogram to reveal some degenerative changes at L4-5, but saw no residual or recurrent nerve root compression. (R. 257). These findings substantially support the ALJ's finding that the objective medical evidence only partially supports Plaintiff's allegations. (*See* R. 17).

Similarly, Plaintiff's physical examination findings support the ALJ's conclusion that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible." (R. 17). Plaintiff's January 25, 2011 follow-up visit with Dr. Ray revealed bilateral positive straight leg tests with no weakness. (R. 239). His May 12, 2011 visit revealed negative bilateral straight leg tests. (R. 238). His October 20, 2011 and February 9, 2012 office visits produced bilateral positive straight leg tests with pain. (R. 237). On October 15, 2012, Plaintiff's examination by consulting physician Dr. M. Clarke Woodfin, Jr., revealed he was able to sit for 15 minutes without getting up to move around. (R. 243). When he did move about the room, Plaintiff was able to do so without any apparent physical limitation. (R. 244). He was able to go from a sitting position to being supine using his abdominal muscles. This is significant

because a person with "a bad back problem" typically would not be able to do that. (*Id*.) Instead, that person would turn to one side and use his arms to let himself up or down. (*Id*.) Plaintiff was also able to stand on either leg alone, toe and heal walk, and fully squat and arise. (*Id*.) His spinal examination was normal except for positive straight leg raise testing on the right and positive sitting leg raise testing on the left. (*Id*.) His neurological and motor testing was normal in all extremities and "without apparent discomfort <u>anywhere</u>." (*Id*. (underlining in original)).[6]

Plaintiff's January 7, 2013 physical examination demonstrated he possessed normal motor strength, sensation, gait, and reflexes. (R. 258). His "[c]hronic low back pain" was described as degenerative in origin. (*Id*.) His April 29, 2013 examination revealed that his pain had worsened and that his lower extremity "stays numb." (R. 267). The examining physician, Dr. Kasey Hill, diagnosed Plaintiff with postlaminectomy syndrome, ongoing radicular symptoms and low back pain. (R. 268). He further commented that Plaintiff might "benefit at least from one more surgical opinion to make sure nothing else can been done" for his

---

[6]In his report summary, Dr. Woodfin stated, "By an avoidance-type back, I mean that if one avoids frequent bending and heavy lifting one should get along fairly well; this back is somewhat worse than that." (R. 245). He offers no further discussion or explanation on this statement.

"intractable back pain."[7] (*Id.*) Plaintiff's May 21 and June 13, 2013 examinations demonstrated spinal tenderness, mild decrease in left hip strength, and decreased sensation in the left lower extremity. (R. 263-64). Plaintiff also voiced complaints of "numbness, tingling, and burning-type pain radiating down the left leg." (R. 263). Dr. Hill noted on June 13, 2013, that Plaintiff was doing "slightly better" following the increase in his Lortab prescription, but he still had "some significant neuropathic-like symptoms." (*Id.*)

    The undersigned does not find that the ALJ mischaracterized the evidence. To the contrary, the court finds his assessment of the evidence was appropriate. Plaintiff's physical examinations did fluctuate during the relevant period. Thus, it was reasonable for the ALJ to find that because the physical observations varied widely, "they only partially support the claimant's allegations of disabling pain and dysfunction." (R. 18).

    Plaintiff also challenges the ALJ's findings that (1) Plaintiff worked at substantial gainful activity levels with his back impairment in 2011; (2) his treatment has generally been routine and conservative; and (3) there was a significant gap in treatment from February 2012 to January 2013, demonstrating "a pattern of noncompliance with pain management measures." (R. 18).

---

[7]There is no indication in the record that Plaintiff followed up on this suggestion.

Concerning his 2011 work history, the ALJ stated as follows:

> ... in January 2011, the claimant reported progressive leg and back pain to Dr. Ray.  Upon physical examination, Dr. Ray observed that, the claimant had positive straight leg raises bilaterally.  Dr. Ray diagnosed the claimant with lumbar radiculopathy and prescribed the narcotic analgesic Lorcet for pain....  Despite this medication regimen, the claimant continued to report radiating low back pain in May and October of 2011, and also described having bilateral leg pain with numbness in the left lower extremity as early as May 2011.  Notably, these are the same type of pain and dysfunction that the claimant currently alleges preclude him from working.  However, the record shows that in 2011 he was able to work despite the symptoms resulting from his back impairment....  The fact that the claimant's back impairment did not prevent the claimant from working at substantial gainful activity levels in 2011 strongly suggests that it would not currently prevent work.

(R. 18).  The record does demonstrate that Plaintiff experienced pain, spinal tenderness, some decrease in hip strength, and occasional decreased sensation in the lower extremities after his onset date of January 2, 2012.  However, Plaintiff experienced similar issues in 2011 and was able to work.  (*See* R. 18, 122-23, 237-39).  Accordingly, it was appropriate for the ALJ to conclude this impacted his assessment of Plaintiff's allegations of disabling pain and dysfunction during the relevant period.

Plaintiff also argues that the ALJ "grossly mischaracterized the actual evidence" when he found that Plaintiff's treatment has generally been routine and conservative and there was a significant gap in treatment from February 2012 to

January 2013. (Doc. 11 at 8). A plaintiff's conservative course of treatment may be considered in evaluating subjective complaints of disabling symptoms. *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (a course of conservative treatment may be considered in determining whether substantial evidence supports an ALJ's decision); *see also Carson v. Comm'r Soc. Sec.*, 440 F. App'x 863, 865 (11th Cir. 2011) (the ALJ properly considered Plaintiff's conservative course of treatment).

Plaintiff's medications during the relevant period included taking Mobic, Ibuprofen, and Lortab. (R 19, 258, 270). He declined to take tramadol (Ultram)[8] during his February 9, 2012 visit with Dr. Ray. (R. 236). As of June 13, 2013, Plaintiff reported that the Mobic and the increased prescription of Lortab were helping take the "edge off the pain." (R. 270). This evidence was properly considered by the ALJ and tends to indicate that Plaintiff's complaints of pain were not as disabling as he suggested.[9]

---

[8] "Tramadol is used to treat moderate to severe pain. Tramadol extended-release is used to treat moderate to severe chronic pain when treatment is needed around the clock." *See* www.rxlist.com/ultram-drug/patient-images-side-effects.htm (last visited August 9, 2016).

[9] After the ALJ issued his opinion in this case, Dr. Hill issued a letter regarding any "misunderstanding or misinterpretation of" his records concerning Plaintiff. He stated, in pertinent part:

> .... I believe [Plaintiff] was evaluated for possible disability and denied based on the assumption of noncompliance, which was some how based on my medical records. I assume a lot of this was related to my note on 05/21/2013. I would like to clarify. The patient and I have certainly had communication difficulties. We continue to work on that and things have improved. Part of the issue is that the patient really does not like to complain about side effects or medication

With regard to the ALJ's statement that there was a significant gap in treatment from February 2012 until January 2013, Plaintiff acknowledges that there "was a gap in treatment, [but he responds that] there is simply no indication [his] pain was not present during that time period." (Doc. 11 at 10). The Commissioner retorts that this gap in treatment "cuts against [Plaintiff's] allegations that his pain was disabling." (Doc. 14 at 9 (citing R. 18)). The court agrees that this evidence, while not dispositive, indicates that Plaintiff's pain was not as disabling as suggested by him during this period.

As part of this claim, Plaintiff also argues "[t]he ALJ's finding that [he] was non-complaint because he did not use the TENS unit or undergo epidurals is contrary to the evidence which clearly explains the reasons behind those decisions." (Doc. 11 at 10 (citing R. 19)). With regard to the TENS unit, Plaintiff

---

> intolerance. I note in my letter that he took it upon himself to stop Neurontin, which he did, but that was only because he was having side effects with it. I do not think that is the same as noncompliance. I would not expect any patient to continue taking medicine that was causing severe side effects such was the case with Neurontin, Lyrica, and now with Cymbalta. He has not tolerated any of these medicines. They have all caused multiple stomach issues for him. He also took Lortab very sparingly after the first month that I saw him. Part of this was secondary to the patient's fear of becoming addicted. I had to explain to him that he likely requires pain medicines in order to get some relief and, basically since our second visit, he has been very compliant with taking his Lortab 2-3 time a day as needed. It is not prescribed on a scheduled basis. Therefore, there is really no problem with him taking less of it than prescribed. I think it is certainly misleading to say that a patient taking an as needed medicine less often than prescribed is noncompliant. . . .

(R. 284).

acknowledges that it was prescribed for him, but states that he did not know how to use it and no one was sent to show him how to operate it. (*Id.* (citing R. 264)). The full record reveals that Plaintiff did have difficulties with setting up the TENS unit and that Dr. Hill arranged for him to be shown how to use it. (R. 284). Plaintiff learned how to properly use the unit and "he has actually been using it ever since to good effect." (*Id.*) The court finds that to the extent the ALJ is mistaken about Plaintiff's use of the TENS unit, this error is harmless in view of his consideration of multiple aspects of Plaintiff's treatment and history.

Concerning the fact that Plaintiff decided not to have additional epidural block injections (R. 236, 264), the evidence demonstrates that he had epidurals in the past without any relief. (R. 264). While Plaintiff did explain why he chose not to have the additional treatments, that explanation still constitutes evidence that should be considered by the ALJ.

In assessing Plaintiff's situation, the ALJ also properly considered his activities of daily living in evaluating his complaints about pain. (R. 19). *See* 20 C.F.R. § 404.1529(c)(3); *Moore v Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2004). The ALJ found that Plaintiff was able to (1) independently care for his personal needs albeit with some difficulty bending, reaching, standing, and sitting; (2) help take care of pet dogs; (3) prepare leftover meals and frozen dinners; (4) drive; (5)

watch television; (6) play with his grandchildren occasionally; and (7) attend family dinners. He further found that Plaintiff's "broad activities are inconsistent with [his] allegations of disabling pain and dysfunction." (R. 19). While participation in daily activities of short duration, such as those just enumerated, does not necessarily disqualify Plaintiff from a finding of being disabled, it is relevant and proper in assessing Plaintiff's credibility. *See Makjut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 663 (11th Cir. Aug 30, 2010) ("Although a claimant's admission that she participates in daily activities for short durations does not necessarily disqualify the claimant from disability, *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997), that does not mean it is improper for the ALJ to consider a claimant's daily activities at all. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (specifically listing the claimant's daily activities as one of the factors to consider in evaluating the claimant's symptoms)"). These facts support the ALJ's determination that Plaintiff's allegations of disabling symptoms were not entirely credible.

### B. Evidence to Support Residual Functional Capacity

Plaintiff alleges that the ALJ's determination that he was capable of work at the light level of exertion "simply goes against the weight of the evidence which undoubtedly limits him to sedentary work, at best." (Doc. 11 at 11). More

specifically, Plaintiff argues that his "significant back and leg pain . . . limits him to sedentary work." Accordingly, he concludes that given his age, education and past work history, Medical Vocational Guideline 201.10 directs a finding of disability. (*Id.*) The Commissioner retorts that Plaintiff has failed to prove that his impairments caused more functional limitations than those assessed by the ALJ in the RFC finding. (Doc. 14 at 10).

"Disability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself." *Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005); *see* 42 U.S.C. § 423(d)(1)(A) ("The term 'disability' means inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment...."). "[A] diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work." *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)).

Here, after consideration of the entire record, the ALJ found that Plaintiff has the ability to perform a range of light work with limitations. (R. 15 at Finding 5). This determination is premised, in part, on his further finding that Plaintiff's

allegations of disabling symptoms were not entirely credible. Upon consideration, this court finds, as discussed above, that the substantial evidence in the record supports the ALJ's determination and his finding that Plaintiff could perform a range of light work.

## VI. CONCLUSION

Premised on the reasoning set forth above, the undersigned concludes that the Commissioner's decision is due to be affirmed. An order consistent with this finding will be entered contemporaneously herewith.

**DONE**, this the 12th day of August, 2016.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge